STATE OF NORTH CAROLINA v. JIMMY LEE RANDOLPH

No. 606A90

(Filed 2 May 1991)

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Wright, J.,* at the 13 August 1990 Criminal Session of Superior Court, WASHINGTON County. Calendared for argument in the Supreme Court 11 March 1991; determined on the briefs without oral argument pursuant to N.C.R. App. P. 30(d).

*Lacy H. Thornburg, Attorney General, by Elizabeth G. McCrodden, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant.*

FRYE, Justice.

On 12 March 1990, the Washington County Grand Jury indicted defendant for the murder of Lynette Woods. The case was tried noncapitally at the 13 August 1990 Criminal Session of Superior Court, Washington County.

The evidence tended to show that defendant and the victim had lived together and defendant was the father of the victim's three-month-old child. A few weeks before the victim's death, she moved out of defendant's home, moved in with her mother, and began seeing Arthur "Bunk" Williams, an old family friend. Defendant told Williams that he did not like Williams seeing the victim and that defendant was "either going to straighten [the victim] up or kill her one."

On 27 February 1990, defendant and Thurman Brooks met between three and four o'clock in the afternoon at "the block" which was the corner of Fourth and Madison Streets in Plymouth. Brooks testified that he and defendant stayed in that area for the rest of the day, leaving only a few times to get more wine. According to Brooks, both he and defendant consumed large quantities of wine and smoked some cocaine, but neither of them became intoxicated. During the time they were together, defendant told Brooks and others who were present that he was angry and was going to kill somebody. Defendant also took Brooks to Carrie Brown's

Motel where defendant lived, and he showed Brooks that he had packed his clothes. When Brooks asked why defendant's clothes were packed, defendant replied that if he got into trouble he would already have his clothes packed and was ready to turn himself in. Brooks stayed with defendant until about 9:30 or 10 p.m. when Brooks left to go home.

On the evening of 27 February 1990, the victim went to work at the Little Man Restaurant located at the intersection of Highway 64 and Monroe Street, just a few blocks from both defendant's residence and the Plymouth Police Department. Defendant came to the restaurant for a few minutes around 8:30 that evening, had a brief conversation with the victim, and left. The restaurant closed at 11 p.m., and Williams came to pick up the victim from work. Williams was waiting for the victim in the parking lot when he saw defendant walk toward the restaurant. Defendant walked to the restaurant's drive-through window, knocked on the window, and asked one of the other employees to tell the victim to meet him at the back door of the restaurant. Defendant then turned and walked toward the back of the building. The victim met defendant at the back door of the building.

None of the restaurant's employees saw defendant shoot the victim, but several testified to hearing a noise like a "pop" or a "boom" and seeing the victim fall to the floor. No one testified to seeing defendant leave the area after they heard the shot fired. The victim died sometime after 11 p.m. on 27 February 1990 as a result of a shotgun wound to her left chest.

Defendant arrived at the Plymouth Police Department about 11:23 p.m. that evening. He was carrying a tote bag full of clothes, and his right hand was bleeding. Defendant told Phyllis Waterfield, the police dispatcher who was the only person present at the time, "I'm Jimmy Lee Randolph and I just shot Lynette Woods at the Little Man." Waterfield then called Sergeant R. D. McKimmey, who was investigating at the scene of the crime, and told him to return to the station.

McKimmey returned to the station and took defendant into custody. In response to McKimmey's questions, defendant said that he had shot the victim with a sawed-off shotgun using a number six shell and that he fired the gun from a distance of three to five feet. Defendant was advised of his rights and made a statement after signing a waiver. In the statement, defendant said that he

STATE v. RANDOLPH

[328 N.C. 724 (1991)]

and the victim had been arguing over their baby who was born prematurely because of the victim's drug use. He said that he had. gone to the Little Man Restaurant earlier in the evening to talk with the victim about the way the child was being raised and who was keeping the child. Defendant then stated that he left the restaurant and went to get the shotgun. He returned to the restaurant later and shot the victim. After he shot her, he left the area, threw the shotgun down somewhere along the railroad tracks, went to his residence to get his clothes and then to the police station to turn himself in.

The weapon was found several days later about fifteen feet from the railroad tracks and about one hundred and fifty yards from the back door of the Little Man Restaurant. Special Agent Eugene Bishop with the State Bureau of Investigation performed the ballistics testing on the weapon. He testified at trial that the number six pellets recovered from the floor of the restaurant and from the victim's body were consistent with the number six shell inside the weapon. Mr. Bishop further testified that when he test fired the weapon that he had to wear a glove because the particular type of ammunition used in the gun would cause the user's hand to be caught in the gun's locking mechanism when the gun was fired.

Defendant presented no evidence at trial. At the conclusion of the evidence, defendant made a motion to dismiss, but the trial court denied this motion. The jury was instructed on first-degree murder, and the trial court denied defendant's motion to have a second-degree murder instruction given to the jury. The jury found defendant guilty of first-degree murder, and the trial judge entered judgment on 16 August 1990, imposing a sentence of life imprisonment.

Defendant gave notice of appeal in open court, and the trial judge ordered that defendant be allowed to appeal as an indigent. The Appellate Defender was assigned to represent defendant in his appeal to this Court. In the brief filed in this Court, defense counsel stated that after repeated and close examination of the record, extensive review of relevant law, and consultation with fellow counsel, she was unable to identify an issue with sufficient merit to support a meaningful argument for relief on appeal. In accordance with *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), the brief filed by defense counsel discussed two possible assignments of error "that might arguably support the appeal."

**WALKER v. MONUMENTAL GENERAL INS. CO.**

[328 N.C. 727 (1991)]

*Id.* at 744, 18 L. Ed. 2d at 498. Defense counsel requested that this Court conduct a full examination of the record for error, and she submitted to defendant a copy of her brief, copies of the transcript and record, and a letter notifying defendant of his right to submit a brief to this Court on his own behalf in accordance with *Anders.* Defendant did not file his own brief with this Court.

Upon our thorough review of the transcript, record, and briefs, this Court finds no error warranting reversal of defendant's conviction or modification of his sentence. For this reason, we find no error in defendant's trial or sentencing.

No error.